## Inheritance Tax Refunds.

MOYER, Dep. Att'y-Gen., Oct. 9, 1929.—With a recent letter to this department you submitted the petition of the Fayette Title and Trust Company, administrator of the estate of Henry T. Cochran, deceased, late of Fayette County, which had been filed with the board, praying for a refund to the petitioner of transfer inheritance taxes to the amount of $11,121.80, which it is claimed were paid to the Commonwealth as a result of an error of both law and fact.

According to the petition, the decedent died Dec. 28, 1926, a resident of Fayette County, and an appraisement for transfer inheritance tax due the Commonwealth was made, showing the real and personal property of the decedent, at the time of his death, to be of a total value of $1,738,443.11. There appear to have been deductible debts to the amount of $131,535.85, making the net value of the estate $1,606,907.26, which, at 2 per cent., made a tax of $32,138.15 due the State. The estate paid inheritance tax to the

Commonwealth in the amount of $31,298.45. It is contended by the petitioner that included in the appraisement for transfer inheritance tax is an item of 3431 shares of the capital stock of the Cochran Coal and Coke Company, valued by the appraiser at $325 per share, or a total of $1,115,075, which was grossly in excess of its fair value. No appeal was taken from said appraisement, as provided in the Inheritance Tax Act of June 20, 1919, P. L. 521.

In an opinion of the Orphans' Court of Fayette County in this estate, filed May 8, 1929, a copy of which was attached to the petition, the court found: "That a fair valuation for the 3431 shares of the stock in question (that is, of the said Cochran Coal and Coke Company) would be $150 per share as of the time of the death of the decedent." It is, therefore, contended by the petitioner that there was an overvaluation on said stock by the appraiser of $600,425, representing $12,008.50 in tax, which would make the tax due the Commonwealth $20,176.65. Accordingly, it is claimed there has been an overpayment of $11,121.80 in tax as a result of an error of both law and fact on the part of the administrator, the petitioner. Your board is asked to refund to petitioner said amount of tax. You inquire whether this case comes within the provisions of section 503 of the Fiscal Code (Act of April 9, 1929, P. L. 343).

The part of said section 503 immediately applicable to the question presented reads as follows:

"Section 503. Refunds of State Taxes, License Fees, *et cetera*. The Board of Finance and Revenue shall have the power, and its duty shall be, to hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonus or other moneys alleged to have been paid to the Commonwealth as the result of an error of law or of fact, or of both law and fact, and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonus or other moneys out of any appropriation or appropriations made for the purpose, or to credit the account of the person, association, corporation, body politic or public officer entitled to the refund."

Prior to the enactment of the Fiscal Code, the provision for the refund of transfer inheritance taxes erroneously paid into the State Treasury was contained in section 40 of the Act of June 20, 1919, P. L. 521, which provided in part as follows:

"Section 40. In all cases where any amount of such tax is paid erroneously, the State Treasurer, on satisfactory proof rendered to him by the register of wills or Auditor General of such erroneous payment, may refund and pay over to the person paying such tax the amount erroneously paid. All such applications for the repayment of such tax erroneously paid in the treasury shall be made within two years from the date of payment. . . ."

It is to be noted that in said Act of 1919 the expression used with respect to the erroneous payment is, "where any amount of such tax is paid erroneously," whereas in the Fiscal Code the expression used is, "taxes . . . alleged to have been paid to the Commonwealth as the result of an error of law or of fact, or of both law and fact." By the use of the latter expression, the legislature attempted to enlarge the scope comprehended by the words used in the Act of 1919 so as to include errors of law as well as errors of fact. It has been determined by various opinions of this department that the expression "paid erroneously," as found in said Act of 1919, did not include errors of law. Although the expression "erroneously paid" in said Act of 1919 comprehended certain errors of fact, it has never been held by this department that it included errors of judgment on the part of the appraiser in arriving at the value of the decedent's property.

In an opinion by the Attorney-General to the State Treasurer, dated March 11, 1892 (Opinions of Attorney-General, 1891-92, page 76), construing the word "erroneously" in the Act of June 12, 1879, P. L. 206, which act authorizes the State Treasurer to refund collateral inheritance tax which had been paid "erroneously to the register of wills of the proper county for the use of the Commonwealth, . . . on satisfactory proof rendered to him by said register of wills of such erroneous payment," Attorney-General Hensel said as follows: "The legislature having provided, in the Act of 1887, for an appeal from the register's appraisement of the value of real estate for collateral inheritance tax, it cannot be assumed that it was ever contemplated the State Treasurer should be constituted an appellate jurisdiction on this subject, or that he should be empowered to revise an error of judgment on the part of the appraiser, nor that interested parties should be permitted to take the chances of property being appraised too low and secure a rebate from the Commonwealth if it happens to have been appraised higher than its market price."

It was expressly held in this opinion that the word "erroneously" as used in the Act of 1878 did not authorize the State Treasurer to revise an error of judgment on the part of the appraiser as to the value of the real estate in question, upon which appraised value tax had been paid, and that no appeal having been taken from the appraisement, it became conclusive. The legislature has not indicated in section 503 of the Fiscal Code any intention to change the law in this respect.

Section 13 of the Act of June 20, 1919, P. L. 521, provides that any person not satisfied with the appraisement of the property of a resident decedent may appeal, within thirty days, to the Orphans' Court. It is expressly provided that "upon such appeal, the court may determine all questions of valuation, etc." This provision has not been changed or modified in any respect by the Fiscal Code. Any question as to the overvaluation of the capital stock of the Cochran Coal and Coke Company in the appraisement in this case, which was made on March 28, 1927, about three months after the death of the decedent, should have been raised by the parties in interest in an appeal to the Orphans' Court. However, even though an appeal had been taken in this case, it is not clear to us how the fact, referred to in the opinion of the Orphans' Court in discussing the value of the coal lands in question, that an explosion had occurred in these mines in January following the death of the decedent, necessitating the flooding of the mines, the interruption of operations and the occasioning of much loss thereby, or any other factor occurring since the death of the decedent, which tended to lessen the value of the coal land in question, could affect the value of the coal stock for transfer inheritance tax purposes, said value being as of the date of the death of the decedent.

You are, therefore, advised that the legislature, in section 503 of the Fiscal Code, in providing, *inter alia*, for a refund of taxes paid to the Commonwealth as the result of an error of law or of fact, or of both law and fact, did not intend to authorize your board to allow a refund of an alleged overpayment of tax due to an error of judgment on the part of the appraiser in arriving at the value of the property of a decedent at the date of his death.

Accordingly, the application for refund in this case should be refused. An appeal should have been taken in this case from the appraisement for transfer inheritance tax, within thirty days, to the Orphans' Court, as provided in section 13 of the Act of June 20, 1919, P. L. 521.

From C. P. Addams, Harrisburg, Pa.